UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LIONEL VILLARREAL,

                Petitioner,

v.                                                                    CASE NO. 05-74880
                                                                      HONORABLE ARTHUR J. TARNOW
WILLIE O. SMITH,

                Respondent.
_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

Petitioner Lionel Villareal has filed a *pro se* habeas corpus petition under 28 U.S.C. §

2254. The habeas petition challenges Petitioner's state convictions for second-degree murder

and possession of a firearm during the commission of, or attempt to commit, a felony (felony

firearm). Respondent urges the Court to deny the habeas petition. Because the state court's

adjudication of Petitioner's claims was objectively reasonable, the habeas petition must be

denied.

## I. Background

Petitioner was charged in Saginaw County, Michigan with open murder and felony

firearm. The charges arose from allegations that Petitioner fatally shot his eighteen-year-old

girlfriend on September 26, 1999, in Saginaw, Michigan. On March 30, 2000, a Saginaw

County Circuit Court jury found Petitioner guilty of second-degree murder, Mich. Comp. Laws §

750.317, and felony firearm, Mich. Comp. Laws § 750.227b. The

trial court sentenced Petitioner to two years in prison for the felony firearm conviction and to a consecutive term of life imprisonment for the murder conviction.

Petitioner raised his first four habeas claims in an appeal of right. He argued that the trial court erroneously allowed a witness to testify outside his area of expertise and that the court violated state law by excluding his comment at the crime scene. He also claimed that the prosecutor engaged in misconduct and that the sentencing guidelines were incorrectly scored. The Michigan Court of Appeals affirmed Petitioner's convictions and sentence in an unpublished opinion. *See People v. Villarreal*, No. 228527 (Mich. Ct. App. June 4, 2002).

Petitioner raised the same four claims in the Michigan Supreme Court. He asserted an additional claim, which alleged that excluding his comment at the crime scene violated his right to confront witnesses. On December 30, 2002, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Villarreal*, 467 Mich. 933; 655 N.W.2d 567 (2002) (table).

On July 31, 2003, Petitioner filed a motion for relief from judgment in which he alleged that his attorneys failed to litigate a meritorious Fourth Amendment claim. The trial court denied the motion in a reasoned opinion. Petitioner then filed a habeas corpus petition in the Western District of Michigan where he raised the same issue that he presented to the trial court in his motion for relief from judgment. United States District Judge Robert Holmes Bell dismissed Petitioner's habeas petition without prejudice for failure to exhaust state remedies. *See Villarreal v. Jones*, No. 5:04-cv-35 (W.D. Mich. Mar. 23, 2004).

Petitioner subsequently returned to state court and filed applications for leave to appeal in the State's appellate courts. Both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Villareal* (sic), No. 256769 (Mich. Ct. App. Dec. 16, 2004); *People v. Villareal a/k/a Villarreal*, 474 Mich 895; 705 N.W.2d 132 (2005) (table).

Petitioner filed the pending habeas corpus petition on December 27, 2005. The Court has construed the habeas petition to include the same claims that Petitioner presented to the state courts. These claims are:

I.  The trial court erred in allowing an expert in crime scene reconstruction to testify and speculate beyond the area of his expertise, denying Defendant his right to due process and a fair trial.

II.  The trial court erred in excluding Defendant's statements at the scene of the occurrence immediately after the alleged shooting, where the statements were part of the res gestae and were not hearsay, denying Defendant his due process right to a fair trial.

III.  Defendant was denied a fair trial by repeated instances of prosecutorial misconduct.

IV.  Defendant is entitled to be resentenced before a different judge where his sentencing guidelines were incorrectly scored.

V.  The trial court violated Defendant's Fourteenth Amendment guarantee of due process of law of confrontation guaranteed by the Sixth Amendment, when the trial court incorrectly excluded/ruled that Melissa Mata's statements were hearsay.

VI.  Defendant was deprived of his Fourth and Sixth Amendment rights when his defense and appellate counselors failed to litigate at trial and on direct appeal a meritorious Fourth Amendment violation.

Respondent argues that these claims are procedurally defaulted and meritless. The Court agrees that Petitioner's claims lack merit. The Court therefore will proceed to address the substantive merits of Petitioner's claims, for neither exhaustion of state remedies, *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005), *cert. denied sub nom Houk v. White*, __ U.S. __, 127 S. Ct. 578 (2006), *and cert. denied sub nom White v. Houk*, __ U.S. __, 127 S. Ct. 581 (2006), nor procedural default, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *cert. denied*, 546 U.S. 1100 (2006); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)), is a jurisdictional bar to substantive review of a meritless claim.

## II. Standard of Review

Section 2254(d) of Title 28, United States Code, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

No state court adjudicated the merits of Petitioner's claim under the Confrontation Clause. Therefore, the deference due under 28 U.S.C. § 2254(d) does not apply, and habeas review of that claim is *de novo*. *Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006) (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), and citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

## III. Discussion

### A. The Witness on Crime Scene Reconstruction

Petitioner alleges that the trial court erred in allowing Detective Lieutenant David Menzie of the Michigan State Police to testify as an expert in "crime scene behavior analysis." Petitioner contends that Lieutenant Menzie should not have been permitted to give highly prejudicial and speculative testimony about Petitioner's state of mind and relationship with the victim.

The Michigan Court of Appeals concluded on review of this claim that the trial court did not abuse its discretion in admitting Lieutenant Menzie's expert testimony. Petitioner, however, asserts that Menzie had no knowledge of Hispanic culture and no training or experience in psychology or behavioral analysis.

Although the heading for Petitioner's claim alleges a violation of Petitioner's rights to due process and a fair trial, Petitioner relies almost entirely on state law, and the federal cases that he mentions are based on the Federal Rules of Evidence, not the Constitution. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241 and *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)). "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Therefore, Petitioner is not entitled to relief on the basis of his claim about Lieutenant Menzie's testimony.

## B. Excluding Evidence

The second and fifth habeas claims allege that the trial court erroneously excluded evidence regarding Petitioner's comment and conduct immediately after the shooting. Petitioner wanted to introduce evidence that, after the shooting, he rubbed the victim's head and said to her, "Don't leave me, baby girl." Melissa Mata informed Detective Robert Ruth that Petitioner made this comment. Mata was unavailable to testify at Petitioner's trial, and the trial court ruled that Detective Ruth's account of what Mata had said to him was hearsay on hearsay. The

Michigan Court of Appeals agreed that the testimony was hearsay and that it did not fit within any exception to the hearsay rule.

### 1. The State Law Issue

Petitioner contends that his statement was part of the *res gestae* of the crime and was admissible under the rule of completeness and under the state-of-mind or catch-all exceptions to the hearsay rule. "[H]abeas review does not ordinarily extend to state court rulings on the admissibility of evidence." *Fuson v. Jago,* 773 F.2d 55, 59 (6th Cir. 1985). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991)).

The trial court's ruling was not fundamentally unfair, because there was other evidence of Petitioner's conduct shortly after the shooting. Two people who were sleeping in the house when the crime was committed testified that, after the shooting, Petitioner paced the floor, appeared to be upset, approached the victim, and instructed someone to call the 911 operator. A police officer testified that Petitioner was sitting or lying on the floor next to the victim when the officer arrived on the scene. The officer described Petitioner as distraught; he noted that Petitioner was holding the victim's shoulders and rubbing her face with his hands. Still another officer testified that, when Petitioner subsequently learned that the victim had died, he was very upset, cried uncontrollably, and writhed on the floor. Although none of these witnesses repeated Petitioner's alleged comment, "Don't leave me, baby girl," the witnesses did convey Petitioner's

7

conduct and reactions after the shooting. Therefore, the trial court's evidentiary ruling was not fundamentally unfair, and Petitioner has no right to relief on the basis of his hearsay claim.

### 2. The Constitutional Issue

Petitioner's constitutional argument is that the trial court's ruling deprived him of his right to confront the witnesses against him. Even assuming for the sake of expediency that the trial court's evidentiary ruling violated Petitioner's right of confrontation, the constitutional error was harmless.

The victim's sister testified that the victim wanted to terminate her relationship with Petitioner, but was afraid to do so. On the evening before her death, the victim called her cousin and stated that she needed a ride because she wanted to leave the house where she, Petitioner, and others were socializing and where the crime ultimately occurred. Other witnesses testified that Petitioner shot the victim.

Although Petitioner's defense was that he did not know the gun was loaded and that the gun accidentally discharged two times, a firearms expert claimed that he was unable to make the gun discharge accidentally and that it would be unusual for a gun to accidentally discharge twice. In a statement to a detective, Petitioner claimed that his intent had been to have sex with the victim, but he admitted to the detective that he racked the gun and placed it on the victim's crotch.

There was additional evidence that Petitioner lied to the police when he denied using drugs on the night in question and claimed that emergency personnel must have removed the victim's clothing. One witness testified that she saw Petitioner and others using cocaine on the

night of the shooting, and another witness observed Petitioner pulling down the victim's pants after the shooting.

Because the evidence, as summarized above, was substantial, excluding evidence of Petitioner's comment, "Don't leave me, baby girl," could not have had a "substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).[1] In other words, admitting the evidence would not have led to an acquittal or a conviction on the lesser-included offense of involuntary manslaughter. Therefore, the alleged constitutional error was harmless.

### C. The Prosecutor

Petitioner claims that he was denied a fair trial by repeated instances of prosecutorial misconduct. According to Petitioner, the prosecutor referred to facts not in evidence when he stated that Petitioner obtained a gun from his car, chambered the gun, and disposed of a bullet on the porch. Petitioner contends that there was no evidence to support these comments. The Michigan Court of Appeals reviewed this claim for "plain error" because Petitioner did not object to the prosecutor's comments during trial.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). Petitioner must demonstrate that the

---

[1] Last year, the Supreme Court reaffirmed that, "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*, 507 U.S. 619, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman* [*v. California*, 386 U.S. 18 (1966)]." *Fry v. Pliler*, __ U. S. __, __, 127 S. Ct. 2321, 2328 (2007).

prosecutor's conduct violated a specific constitutional right or infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). It is not enough to show that the prosecutor's conduct or remarks were undesirable or even universally condemned. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). On habeas review, the complained-of conduct must be both improper and flagrant, *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006), *cert. denied*, __ U.S. __, 127 S. Ct. 1376 (2007), and "'so egregious as to render the entire trial fundamentally unfair.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)). Although prosecutors may not misrepresent evidence, *see Hodge v. Hurley*, 426 F.3d 368, 380 (6th Cir. 2005), they may "forcefully assert reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005).

None of the witnesses at trial claimed to see Petitioner with a gun on the day in question, but one of them did see Petitioner leave to get something to eat a few hours before the shooting. Therefore, it was reasonable for the prosecutor to infer that Petitioner obtained a gun from his car. Where Petitioner acquired the gun was inconsequential, in any event, because he tacitly admitted to shooting the victim by informing the police that he did not know the gun was loaded and that it discharged accidentally.

The statement that Petitioner chambered the gun was supported by Detective Robert Ruth's testimony. According to Ruth, Petitioner stated that he chambered a round, that is, racked a bullet into the barrel of the gun. Ruth explained that this meant that the hammer on the gun was cocked and the gun was ready to be fired.

The prosecutor's comment about Petitioner disposing of bullets on the porch also was supported by Detective Ruth's testimony. Although the police found no live bullets on or near the front porch, Petitioner informed Detective Ruth that, after the shooting, he ran onto the front porch, pulled the chamber of the gun, and let bullets fly out of the gun.

In conclusion, none of the prosecutor's comments were improper. Therefore, Petitioner is not entitled to relief on the basis of his prosecutorial misconduct claim.

### D. Trial and Appellate Counsel

Petitioner alleges that he was deprived of his rights under the Fourth Amendment when the police placed him in the back of a police car. He contends that placing him in the police car constituted an arrest and probable cause to arrest him was lacking. The only facts known to the police at the time were that he was found near the slain victim and he had said that the assailant left the residence. Thus, argues Petitioner, there was no probable cause to arrest him and his statements to the police should have been suppressed.

### 1. The Trial Court's Decision

The trial court summarized the facts and Petitioner's five statements to the police as follows:

> There are essentially five statements that are at issue: the one made to Officer Nelson; the one to Sergeant Bearss; and the three statements made to Detective Ruth, two at the scene and one at the police station. A review of the trial transcript reveals the following:
>
> > Officer Laura Nelson was the first police officer to arrive at the scene following a dispatch call that a shooting had occurred at that address. The defendant identified himself and asked that she entered the home whereupon Officer Nelson discovered the victim lying in front of the sofa. The defendant then made an unsolicited

11

statement that he and his girlfriend, the victim, were arguing and that she became upset and shot herself. He further stated that he took the gun and threw it into the backyard. Shortly thereafter, defendant stated, in the presence of Sergeant Bearss, that an unknown person had entered the residence, shot the victim, and left the scene, running westbound through the backyard. Sergeant Bearss immediately notified Central Dispatch of the need for additional officers to initiate a search and had the defendant placed in the back of a patrol vehicle for additional questioning. It should be noted that the entire residence, including the yard, was in the process of being secured, and that many if not all of the individuals present were being placed in police vehicles for questioning. Any effort to apprehend this alleged assailant was called off when Officer Nelson informed Sergeant Bearss of the previous statement made to her by the defendant. When Detective Robert Ruth arrived at the scene he observed the defendant sitting in the back of a patrol car banging on the window. Detective Ruth opened the door and inquired as to what he wanted, to which the defendant stated that the victim shot herself. A short time latter (sic), Detective Ruth was informed that the defendant wished to talk to him again. He returned to the patrol car and was told by the defendant that his prior statement was a lie and that, instead, the gun accidentally discharged while he was playing around with it and trying to to (sic) make love to the victim. Defendant was taken to the police station where he was given his *Miranda* warnings. He then gave a more detailed, but essentially identical statement supporting his claim of an accidental shooting.

*People v. Villarreal*, No. 99-018046 FC 4, at unnumbered page 2 (Saginaw County Cir. Ct. Oct. 20, 2003).

The trial court found no error in the admission of Petitioner's statements. It noted that the first three statements were unsolicited and made under circumstances that did not raise any Fourth Amendment concerns. The trial court opined that the fourth statement might have been inadmissible, but that Petitioner was not prejudiced by the statement because his fifth statement was admissible and was virtually identical to the fourth statement.

The trial court went on to say that, even if the last two statements had been excluded, doing so would have forced Petitioner to advance two contradictory theories: that the shooting was self-inflicted and that it was committed by an unknown assailant. The trial court correctly noted that there was no evidence to support either theory and that defense counsel's apparent strategy was to avoid a conviction on first-degree murder by acknowledging Petitioner's contradictory statements and arguing that the shooting was accidental. The trial court concluded that Petitioner was afforded competent representation by his trial and appellate attorneys.

### 2. The Fourth Amendment Claim

Petitioner's Fourth Amendment claim is not cognizable on habeas review, because he was afforded a full and fair opportunity to litigate the claim in state court. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976).

### 3. The Sixth Amendment Claim

#### a. Standard for Ineffective Assistance

Petitioner's Sixth Amendment claim is cognizable on habeas review. However, to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his attorney's "performance was deficient" and "the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The

defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

### b. Supreme Court Precedent

"The Fourth Amendment, made applicable to the States by way of the Fourteenth Amendment, *Mapp v. Ohio*, 367 U.S. 643 (1961), guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). "[S]earches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment -- subject only to a few specifically established and well delineated exceptions." *Id.* (quoting *Thompson v. Louisiana* 469 U.S. 17, 19-20 (1984)) (quotation marks omitted). One exception was established in *Terry v. Ohio*, 392 U.S. 1 (1968), where the

14

Supreme Court authorized police officers to make "reasonable inquiries" of a person when the

officer observes conduct that may indicate a crime is occurring.

> The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. See, *e.g., United States v. Brignoni-Ponce,* 422 U.S., at 881-882, 95 S.Ct., at 2580-2581; *Adams v. Williams,* 407 U.S., at 146, 92 S.Ct., at 1923. It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.

*Florida v. Royer*, 460 U.S. 491, 500 (1983).

"[N]ot every encounter between a civilian and the police constitutes a 'seizure' invoking

fourth amendment safeguards." *United States v. Taylor*, 956 F.2d 572, 575    (6th Cir. 1992).

"[A] person is 'seized' only when, by means of physical force or a show of authority, his

freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980).

The test is whether, "in view of all of the circumstances surrounding the incident, a reasonable

person would have believed that he was not free to leave." *Id*. at 554. "[W]hen police actions go

beyond checking out the suspicious circumstances that led to the original stop, the detention

becomes an arrest that must be supported by probable cause." *United States v. Obasa*, 15 F.3d

603, 607 (6th Cir. 1994) (citing *Dunaway v. New York*, 442 U.S. 200, 210-12 (1979)). "Probable

cause exists where 'the facts and circumstances within their (the officers') knowledge and of

which they had reasonably trustworthy information (are) sufficient in themselves to warrant a

man of reasonable caution in the belief that' an offense has been or is being committed."

*Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

### c. Petitioner First and Second Statements

Petitioner had not been seized when he made his first two statements to the police. The record indicates that he instructed someone to call the 911 operator and that he remained at the scene until Officer Laura Nelson arrived. He invited Officer Nelson into the house and made the unsolicited statement that the victim shot herself during an argument with him. Sergeant Bearss arrived at the scene minutes later and spoke with Petitioner on the front porch. Petitioner informed Bearss that the shooter had run out the front door and through the backyard.

Because there were no significant restraint placed on Petitioner's freedom of movement at the time of his first two statements, the Fourth Amendment was not implicated. "A purely consensual encounter between a police officer and a citizen does not implicate the Fourth Amendment. It is only when an officer restrains an individual's liberty 'by means of physical force or show of authority' that Fourth Amendment protections attach." *Bennett v. Eastpointe*, 410 F.3d 810, 821 (6th Cir. 2005).

### d. Petitioner's Third and Fourth Statements

The Court agrees with Petitioner that he was "seized" after he made his second statement and was placed in a police officer's car. Even if Petitioner was not handcuffed or locked in the car, a reasonable person would not have felt free to leave. The question is whether the seizure amounted to an arrest, thereby affording Petitioner the protections of the Fourth Amendment.

*See id.* at 836 n.4 (explaining that, where the question is whether detention in the back of a police car constitutes an arrest, courts must determine "whether in fact the individual has been arrested, and if so, whether there was probable cause to support the arrest"). The Court need not answer this question.

Even assuming that Petitioner was under arrest when he made his third and fourth statements in the police car, Petitioner has failed to show that his attorneys' omissions prejudiced him. The third statement -- that the victim shot herself -- merely reiterated the first statement, which was admissible because Petitioner had not been detained and was not under arrest at the time. The fourth statement -- that the shooting was accidental -- provided a valuable defense to the first-degree murder charge, which required the prosecutor to show that Petitioner premeditated and deliberated the killing. As the trial court recognized, defense counsel was able to use Petitioner's statements that the shooting was accidental without having to place Petitioner on the stand and without subjecting him to "what undoubtedly would have been withering cross-examination." *Villarreal*, Saginaw County Circuit Court No. 99-018046 FC 4, at unnumbered page 3.

### e. Petitioner's Fifth Statement

Petitioner was under arrest when he was taken to the police station, interrogated, and advised of his constitutional rights. However, there was probable cause to arrest him by then. He had provided three very different explanations for the shooting, and his prior statement -- that the shooting was accidental -- could have been interpreted as an admission that he shot the

victim. Thus, Petitioner's arrest was supported by probable cause, and there was no Fourth Amendment basis for excluding the fifth statement.

The Court concludes that Petitioner's Fourth Amendment claim was not clearly meritorious, and even if it were, there is not a reasonable probability that the verdict would have been different absent his statements. Therefore, Petitioner's trial and appellate attorneys' performances were not deficient and Petitioner was not prejudiced by his attorneys' omissions.

### E. The Sentence

Petitioner asserts that he is entitled to be re-sentenced before a different judge, because the sentencing guidelines were incorrectly scored. He contends that, if the guidelines had been correctly scored, the recommended minimum sentence would have been 162 to 270 months (thirteen and a half to twenty-two and a half years) instead of 180 months (fifteen years) to life imprisonment.

Questions of state sentencing law, and the proper interpretation of state sentencing guidelines are not cognizable on federal habeas corpus review. *Miller v. Vasquez,* 868 F.2d 1116, 1118-19 (9th Cir. 1989); *Whitfield v. Martin*, 157 F. Supp. 2d 758, 762 (E.D. Mich. 2001) (Tarnow, J.). As succinctly explained by the Sixth Circuit,

> [a] state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only. *Travis v. Lockhart,* 925 F.2d 1095, 1097 (8th Cir.1991); *Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir.1988). "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)).

*Howard v. White*, 76 Fed. Appx. 52, 53, 2003 WL 22146139, at **2 (6th Cir. Sept. 16, 2003) (unpublished).  Federal courts review habeas petitions "for violation of federal constitutional standards."  *Milton v. Wainwright*, 407 U.S. 371, 377 (1972).  As Petitioner has not alleged a violation of the Constitution, he has no right to relief on the basis of his sentencing claim.

## IV.  Conclusion

The state courts' rejection of Petitioner's claims did not result in an unreasonable determination of the facts.  Nor did the state court decisions result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent.  Accordingly, the Petition for Writ of Habeas Corpus [Doc. 1, Dec. 27, 2005] is  **DENIED.**


S/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge


Dated:  February 5, 2008


I hereby certify that a copy of the foregoing document was served upon counsel of record on February 5, 2008, by electronic and/or ordinary mail.


S/Catherine A. Pickles
Judicial Secretary